EL DORADO ICE & PLANING MILL COMPANY v. KINARD.

Opinion delivered October 17, 1910.

1. CONTRACTS—MUTUALITY.—A contract which leaves it entirely optional with one of the parties as to whether or not he will perform his promise is not binding upon the other. (Page 187.)

2. SAME—MUTUALITY.—A contract for the sale of the entire output of a mill of a known capacity for a definite period of time and at certain prices is binding, although the amount so sold it not definitely ascertained, as it is capable of an approximately accurate estimate. (Page 188.)

3. SAME—MUTUALITY.—Where a party to a contract not originally bound by it has executed such contract on his part, the other party can not defend upon the ground that the contract was not mutual. (Page 188.)

4. FRAUDS—STATUTE OF—WAIVER.—The defense of the statute of frauds is waived unless specially pleaded. (Page 189.)

5. INSTRUCTIONS—NECESSITY OF SPECIFIC OBJECTION.—An objection to the verbiage of an instruction must be specific enough to call the trial court's attention to the defects complained of. (Page 189.)

Appeal from Union Circuit Court; *George W. Hays,* Judge; affirmed.

*Marsh & Flenniken* and *Gaughan & Sifford,* for appellant.

The contract, by reason of its lack of mutuality in the corresponding undertakings of the parties, is unenforcible. 64 Ark. 398; 93 Mich. 491; 29 Am. Rep. 530; 7 Am. & Eng. Enc. of L. (2 ed.), 114; 90 Ark. 509.

*Powell & Taylor,* for appellee.

The contract is mutual. It is an obligation upon appellee to secure the entire cut of a mill of a specified grade of lumber for a certain period and to deliver it, or have it delivered f. o. b. cars at any point not over fifteen miles from El Dorado, and the correlative and reciprocal obligation on the part of appellant to receive and pay for the lumber when so delivered. 7 Am. & Eng. Enc. of L. (2 ed.), 114; 125 S. W. (Ark.), 659; 40 Minn. 497; 61 Mo. 534; 74 Me. 439; 67 Pac. 347; 108 Ill. 656;

15 L. R. A. 218; 110 Ill. 427; 62 N. E. 367; 155 Fed. 77; 11 L. R. A. (N. S.) 713; 160 Ill. 85; 69 Fed. 773.

If there was any want of mutuality and certainty in the contract, it was cured by Kinard's part performance in securing the output of a mill and delivering lumber to appellant thereunder.   90 Ark. 504; *Rozier* v. *St. Louis & San Francisco Rd. Co.,* Mo. App. ..; 73 S. W. 747; 7 Am. & Eng. Enc. of L. (2 ed.) 115; 74 S. W. 724; 83 Ark. 153.

FRAUENTHAL, J.   This was an action instituted by the appellee to recover damages for the alleged breach of a contract for the purchase of lumber manufactured by appellee.   The appellant, the El Dorado Ice & Planing Mill Company, was the owner of a planing mill situated in El Dorado, Arkansas, and on June 10, 1907, it made the following written contract with appellee:

"This contract and agreement, made and entered into this 10th day of June, 1907, by and between the El Dorado Ice & Planing Mill Company and J. L. Kinard, both of El Dorado, Arkansas, witnesses that the El Dorado Ice & Planing Mill Company bind and obligate themselves, successors and assigns, to pay J. L. Kinard $13.50 per thousand feet for any entire mill cut of yellow pine lumber grading No. 2 common and better that he may secure from any mill or own himself, except lumber loaded at Urbana, Arkansas; that at $13.25 during the period of fifteen months.   J. L. Kinard agrees to deliver, or have delivered, f. o. b. cars any point not over fifteen miles from El Dorado.   If the said J. L. Kinard should secure or manufacture any such entire mill cut of yellow pine lumber grading No. 2 common or better near enough to El Dorado to deliver the lumber at the plant of the El Dorado Ice & Planing Mill Company, in that event they are to pay $14 per thousand feet. El Dorado Ice & Planing Mill Company bind and obligate themselves, successors and assigns, to pay for all lumber received on cars as soon as the car is unloaded at their planing mill at El Dorado, Arkansas, the time not being over one week from date of bill of lading; and if said lumber is hauled in or on wagons and delivered at the platform of the El Dorado Ice & Planing Mill Company, they are to pay for such lumber at least once each week.

"In witness whereof the parties to this contract have hereunto set their names and seals the day and date above written.
  (Signed)                    "J. L. Kinard,
                              "El Dorado Ice & Planing Mill Co."

In pursuance of said contract the appellee secured a sawmill known as the Caney Lumber Company mill, and located at Upland; and, after making all necessary preparations, began to manufacture and deliver to appellant the kind and grade of lumber mentioned in the contract at the points stipulated therein, and continued to do so until about the 10th day of November, 1907. During said time the said appellant received and accepted the lumber so delivered to it under and in pursuance of the terms of said written contract. On account of the stringency in financial affairs occurring about that time, the appellant requested the appellee to suspend for a time the delivery to it of the lumber under said contract.

There is a sharp conflict in the testimony as to the agreement that was then entered into by the parties. Upon the part of the appellant the testimony tended to prove that the appellee agreed to suspend the delivery of lumber cut by the said mill until financial affairs should improve and money matters become easier, and in consideration of such suspension the appellant did pay to appellee the sum of $600. On the other hand, the testimony on the part of appellee tended to prove that it was agreed that he should suspend the delivery to appellant of the lumber from said mill during the above named time, and that appellant agreed to receive and accept the entire amount of lumber cut by such a mill then being operated under the terms of the written contract for such time in addition to the time named in the contract as the suspension should last, and in addition thereto to pay to appellee one-half of the feed of his stock or cattle during the time of such suspension; and that appellee agreed to furnish and deliver to appellant such lumber during such time. The testimony on behalf of appellee tended to prove further that in pursuance of said agreement he did suspend the delivery of lumber to appellant for a period of four and a half months, or until about March 20, 1908, and that appellant paid to him $600 in settlement of one-half of the feed of his stock or cattle during said time; that, in pursuance of

said agreement, he then resumed the manufacture and delivery of said lumber to appellant and continued to do so until about September 10, 1908, when the appellant refused to further receive from him lumber under said written contract or subsequent agreement. About this date the appellee ceased the operation of the Caney Lumber Company sawmill located at Upland, and secured another mill of the same capacity and situated nearer to appellant's plant, and continued the manufacture of lumber of the kind and grade mentioned in said contract, and sought to deliver same to appellant at the points stipulated in said written contract under said parol agreement for the extension of the time of said contract, but appellant refused to further receive the lumber. Thereupon appellee sold the cut of said mill for four and one-half months from said date, the same being for the time of the alleged extension of said contract, at the then prevailing market prices, which were less than the price named in said written contract. He instituted this suit for the recovery in damages of the difference between said contract and market prices of the lumber, and upon a trial of the case he obtained a judgment therefor.

It is insisted by appellant that the above-written contract lacks mutuality, and on this account it is not enforceable. It is urged that by said contract appellant agreed to pay to appellee certain prices for any entire mill cut of certain lumber that he might secure from any mill, but that under the terms of the contract the appellee did not obligate himself to secure the lumber from any mill; that, in effect, it was only an agreement on the part of appellee to furnish the lumber that he might choose to secure from a mill, and that if he did not desire to or did not secure any lumber from a mill he was not under any obligation to do so by virtue of the contract, but that it was entirely optional with him whether he would do so or not. It is further urged that the contract is so indefinite as to the quantity and dimensions of the lumber that the subject-matter thereof can not be approximately estimated, and therefore could not be the basis of an enforceable liability against appellee.

A contract to be enforceable must impose mutual obligations on both of the parties thereto. The contract is based upon the mutual promises made by the parties; and if the promise

made by either does not by its terms fix a real liability upon one party, then such promise does not form a consideration for the promise of the other party. As is said in the case of *St. Louis, I. M. & S. Ry. Co.* v. *Clark,* 90 Ark. 504, "mutuality of contract means that an obligation must rest on each party to do or permit to be done something in consideration of the act or promise of the other; that is, neither party is bound unless both are bound." A contract, therefore, which leaves it entirely optional with one of the parties as to whether or not he will perform his promise would not be binding on the other. Such are the contracts wherein one promises to buy all that the other may desire to sell; or wherein one promises to sell or deliver all that he may desire or choose to sell or deliver. *Davie* v. *Lumberman's Mining Co.,* 93 Mich. 491; *Cummer* v. *Butts,* 29 Am. Rep. 530.

And such, too, is the nature of the contracts wherein the quantity sold can not be made reasonably to appear or is incapable of an approximately accurate estimate. *Campbell* v. *American Handle Co.,* 117 Mo. App. 19.

But a contract to sell and deliver to another all that one party may require in an established business, or all the product that the other party may produce for a definite period from a certain mill or plant, does impose such a fixed obligation as to save the mutual character of the promise. In such cases the quantity sold can be made to reasonably appear, and is capable of an approximately accurate estimate. And so a contract for the sale of the entire output of a mill of a known capacity for a definite period would be binding, although the amount so sold is not definitely ascertained. *Burgess Sulphite Fibre Co.* v. *Brownfield,* 62 N. E. 367; *Wells* v. *Alexander,* 15 L. R. A. 219; *Excelsior Wrapper Co.* v. *Messinger,* 116 Wis. 549; *Lewis* v. *Atlas Mutual Life Ins. Co.,* 61 Mo. 534; *Lima Locomotive & M. Co.* v. *Natural S. C. Co.,* 11 L. R. A. (N. S.), 713; *Fontaine* v. *Baxley,* 90 Ga. 416; *Thomas-Huycke-Martin Co.* v. *Gray,* 94 Ark. 9.

It is not necessary in this case to determine whether or not the written contract lacked mutuality at its inception and was therefore not enforceable because at its inception the appellee had not assumed a fixed obligation on his part; because he acted

thereon and actually made performance thereof up to November 10, 1907; and because thereafter he entered into a verbal contract with appellant by which he did agree to furnish and deliver to appellant the entire cut of a mill of a certain capacity for a definite period, and the appellant did agree to receive same. The testimony on the part of appellee tended to prove such a verbal agreement, and by the verdict of the jury that contract has been established. Where a party, originally not bound, has executed the contract, the doctrine relative to mutuality does not apply. *Fontaine* v. *Baxley*, 90 Ga. 416; *Louisville & N. Ry. Co.* v. *Coyle*, 123 Ky. 854; *Hoffman* v. *Colgan*, 74 S. W. 724; *Bloom* v. *Home Ins. Co.*, 91 Ark. 367; *L'Amoreux* v. *Gould*, 7 N. Y. 349; *Willets* v. *Sun Mutual Ins. Co.*, 45 N. Y. 45. So that appellant became bound for the payment of all lumber which appellee actually delivered under the written contract up to the date of the suspension. Thereafter the parties entered into the verbal agreement. At that time a mill had been secured. and the quantity of its output was known or was capable of approximately accurate estimation. The appellee then agreed in effect to furnish or sell, and the appellant to receive or buy, the entire output of a mill of that capacity at certain prices and for a definite period. That contract imposed an obligation upon both the parties, and was therefore an enforceable agreement.

The question as to whether or not that agreement fell within the statute of frauds, because it was not to be performed within a year and was not in writing, is not raised or presented in this case. A parol agreement is neither illegal or void. The plea of the statute of frauds is a defense which may be waived. It must be specially set up in the answer and relied upon in order to make it available as a defense. And if it is not thus specially pleaded it is waived. *Guynn* v. *McCauley*, 32 Ark. 97; *Crane* v. *Powell*, 139 N. Y. 389; *Maybee* v. *Moore*, 90 Mo. 343; *St. Louis, I. M. & S. Ry. Co.* v. *Hall*, 71 Ark. 302; 9 Enc. Plead. & Prac. 705.

Complaint is made by appellant as to certain instructions that were given on the part of appellee. This complaint relates to the verbiage of the instruction. No specific objection was made in the lower court to these instructions; nor was the attention of the lower court called to the phraseology of these

instructions which are now criticised. In order for such objection to be available, it was necessary that a specific objection should have been made to the instructions in the lower court, and that court's attention called to the defects that are now urged. *Ark. Midland R. Co.* v. *Rambo,* 90 Ark. 108; *St. Louis, I. M. & S. Ry. Co.* v. *Holmes,* 88 Ark. 221; *St. Louis, I. M. & S. Ry. Co.* v. *Rogers,* 93 Ark. 564; *St. Louis, I. M. & S. Ry. Co.* v. *Carter,* 93 Ark. 589.

Finding no prejudicial error in the trial of the case, the judgment is affirmed.