SLAYDEN *v.* AUGUSTA COOPERAGE COMPANY.

Opinion delivered April 21, 1924.

1. CONTRACTS—MUTUALITY.—A contract for the sale of logs which left it optional with the seller whether he would deliver any logs was lacking in mutuality and unenforceable until performance, but where the seller performed on his part by delivering the logs and the buyer accepted and paid for part of the logs but failed to pay for the rest of the logs so delivered, a cause of action on behalf of the seller arose.

2. PRINCIPAL AND AGENT—AUTHORITY OF AGENT.—An instruction authorizing recovery of the contract price of logs by the seller where the logs were boomed and accepted by an agent of the buyer having authority to buy logs on the bank of the river was correct, and inconsistent with an instruction that, if the agent had instructions to buy only logs on the river bank and for immediate payment, he was a limited or special agent, and verdict must be for the buyer; the latter instruction being misleading.

3. PRINCIPAL AND AGENT—GENERAL AND SPECIAL AGENT.—A general agent acting within the apparent scope of his authority may bind his principal in dealing with one who has no notice of any restrictions upon the agent's authority, but, as to a special agent, that is, one whose authority is limited to a single transaction, or to a particular act, there is no presumption as to his general authority, so that one dealing with him must ascertain the extent of his authority.

Appeal from Woodruff Circuit Court, Northern District: *E. D. Robertson,* Chancellor; reversed.

*S. M. Bone,* for appellant.

1. The appellant was entitled to an instruction presenting his theory of the case, and it was error therefore to refuse the requested instruction on the subject of the authority of the agent. Appellee was bound by the contract and agreement made by its agent, unless appellant had actual or constructive notice that he had no authority to make it. It was within the scope of his apparent, if not real, authority to make the contract. 49 Ark. 320; 96 Ark. 456; 140 Ark. 306; 159 Ark. 524; 2 C. J. 573; 132 Ark. 371. Thoma was an admitted agent, and appellant had the right to presume, in the absence of notice to the contrary, that he was a general agent, clothed with authority coextensive with its apparent scope. *Id.* 55 Ark. 627; 81 Ark. 202; 104 Ark. 150.

2.    The court's instruction to the effect that, if the jury found from a preponderance of the evidence that Thoma was a special agent, the burden was on those who dealt with him to know the extent of his authority, was in the face of the evidence, and not a correct declaration of the law with respect to limited or special agency. 112 Ark. 63; 137 Ark. 418; 1 Mechem on Agency, 737; 132 Ark. 371.; 21 R. C. L. 907.

3.    The contract in this case had been performed on the part of the plaintiff, and the court's fourth instruction was therefore erroneous, since the doctrine relative to mutuality did not apply. 96 Ark. 181, 131 S. W. 460; 90 Ga. 416; 123 Ky. 854; 97 S. W. 772; 8 L. R. A. (N. S.) 433; 124 Am. St. Rep. 384; 74 S. W. (Ky.) 724; 91 Ark. 367.

*H. M. Woods* and *J. F. Summers,* for appellee.

No contract was proved. It does not appear that appellant was under any obligation whatever to put out any amount of timber.  96 Ark. 184.  If Thoma made promises to scale the logs in question, there was no consideration therefor, and a scale could only be consummated by delivery, that is by scale and acceptance.  95 Ark. 421.

WOOD, J.  This is an action by the appellant against the appellee to recover damages for an alleged breach of contract.  Appellant alleged that appellee is an Arkansas corporation, having its principal place of business at Augusta, Arkansas, and engaged in the manufacture of staves and heading and in the purchase of timber for such purposes.  Appellant alleged that he entered into a contract with the appellee by which the appellee agreed to buy and appellant agreed to sell certain lots of timber that appellant would cut and deliver to the appellee on the bank of Black River, at Lockhart; that the appellee agreed to buy all the timber that appellant would cut and deliver at Lockhart on the date of the contract, about the 26th of August, 1920, not exceeding six or seven hundred thousand feet in all, until January 1, 1921; that the appellee agreed to pay the appellant the sum of $35 per M log

feet for all the ash and other hardwood, and the sum of $25 per M log feet for all gum and other soft wood; that appellant entered upon the performance of the contract, and cut and delivered two or three lots of logs, which the appellee took up and paid for at contract prices; that, prior to January 1, 1921, appellant cut and delivered at Lockhart, for the appellee, 71,139 feet of soft wood (gum and elm) which, at $25 per log M, amounted to $1,778.45, and cut and delivered 7,850 feet of hard wood, principally ash, which, at $35 per M log feet, amounted to the sum of $274.05, making a total value of the timber so delivered at the contract price $2,052.50. The appellant further alleged that, after the timber was delivered at Lockhart, the appellee agreed to take the timber up, scale it, and pay for same at the contract price; that it did boom a part of the timber, but wholly failed to pay appellant for any part thereof, though payment had been frequently demanded; that the batch of logs so delivered to appellee had practically disappeared, and that appellant had realized nothing out of them. The appellant prayed for judgment in the sum of $2,052.50, with interest thereon from January 1, 1921.

The appellee, in its answer, admitted that it was a corporation and had its principal place of business at Augusta, Arkansas, and that it was engaged in the manufacture of staves and heading and the purchase of timber for such purposes. It denied specifically all the other allegations of the complaint.

The appellant testified that, on or about the last of August, 1920, he had some timber contracted for, and went to Pete Thoma, the agent of appellee at Augusta, to see if he was getting all the logs he wanted, and Thoma said he was not. Appellant asked him what his price was, and he said $25 for the gum and elm and $35 for the ash. Appellant asked him how much he would take, and he said he would take all appellant put out, if it is six or seven hundred thousand feet. Appellant told him that he (appellant) would put out next week for him, and he scaled three different lots appellant put out. After

appellant made the contract with him, appellant kept teams going, and got some saws and went to hauling next week. Appellant was to deliver the logs on the bank of Black River, at Lockhart. Appellant delivered three batches of logs at Lockhart, and received the last check for these about October. Appellant delivered 71,000 and some odd feet of soft timber and 7,000 and some odd feet of ash timber, which Thoma agreed to scale and pay for, but did not do so. A man by the name of McGill had a batch of logs there, and Thoma came down to scale these logs. After he finished scaling McGill's logs, appellant asked Thoma if he wasn't going to scale appellant's logs, and Thoma replied that he didn't have time then, but that he would be back in four or five days to scale them; he said finally that the company would not let him take up the logs; and he never did anything more about it. They boomed this entire bunch of logs, and Thoma said that he didn't want them to get away. All the logs appellant is suing for were included in this boom. Appellant means by booming them *that Pete Thoma tied them together so that they could not get away.* Appellant tried in every way to get Thoma to scale them. Appellant demanded payment. There was no dispute about the price, but Thoma just refused to take them.

Other witnesses testifying on behalf of the appellant substantially corroborated his testimony.

The testimony of Pete Thoma, on behalf of the appellee, was substantially to the effect that he was employed by the appellant in 1920 as log buyer, and was authorized to buy timber on the bank of the river, but he had no authority to contract for future delivery. He did not make any contract with the appellant for future delivery of logs. He bought some timber from appellant in 1920, but did not have any time contract with him, and did not agree to scale and take up any of the timber in controversy.

Massey testified that he was employed by the appellee, and that it was his duty to buy and scale logs gen-

erally. He employed helpers, and employed Pete Thoma to buy logs on the bank, scale, raft and deliver them, and pay for them in the regular channel. Witness had no authority to employ help, or to authorize an agent to buy timber on time. Pete Thoma had authority in 1920 to buy timber on the bank of the river, and did buy.

The superintendent of the appellee testified that Thoma was appellee's agent in 1920 to buy, and had authority to buy logs for the appellee. He bought batch after batch and sent them in, and appellee paid for them. Appellee knew he was buying, and held him out as their agent to buy. He did not have authority to make contracts for future delivery, and did not make any such contracts. .

The cause was submitted to the jury upon instructions to which we will later refer. The jury returned a verdict in favor of the appellee. Judgment was rendered in its favor, from which is this appeal. ·

1. The testimony on behalf of the appellant tended to show that appellee agreed to take all the gum and elm logs at $25 per M log feet, and all the ash logs at $35 per M log feet, that the appellant would put out, amounting to six or seven hundred thousand feet, and that the appellant went to work under the contract and put out 71,139 feet of soft wood and 7,850 feet of hard wood at the contract price, for which amount appellant instituted this action. Appellee defends the action on the ground that there was no contract for the payment of these logs, because it lacked mutuality, and was therefore not binding upon the appellee. The appellee is correct in the contention that the appellant, under this contract, was not bound to put out any logs, and, if appellee had repudiated the alleged contract before the appellant had entered into the performance thereof on his part, the appellee would not have been liable in damages for breach of the contract. The contract, as alleged, left it entirely optional with the appellant as to whether he would put out any logs for the appellee. There was nothing to

bind him to put out any amount of timber, much less the six or seven hundred thousand feet which appellant testified the appellee agreed to buy. Therefore if the appellant were suing the appellee to compel it to take the logs in controversy, or for damages because of appellee's failure to take the logs, the appellee would not be liable, and appellant could not maintain such an action.

The contract would be unenforceable because of the lack of mutuality, under the doctrine announced in *El Dorado Ice & Planing Mill Co.* v. *Kinard,* 96 Ark. 184, and *Emerson* v. *Stevens Grocery Co.,* 95 Ark. 421, upon which the appellee relies. But the facts of this record do not bring it within the doctrine of the above cases. The appellant predicates his action upon a contract which he alleged had been performed on his part, and which had been partly performed upon the part of the appellee by receiving and accepting and paying for certain logs that had been delivered under the contract, and by accepting and receiving the logs in controversy, but failing to pay the amount agreed to be paid for the same, for which amount this action was instituted. In other words, the appellant predicates this action upon a contract which, although he was not originally bound by, he had actually performed, by cutting and delivering logs to appellee, for which his action was instituted, and that appellee had received and accepted the same, but had refused to pay for them. The appellant's complaint stated a cause of action, and his testimony tended to sustain the allegations of his complaint. It was therefore an issue for the jury to determine whether or not the appellee was liable. In *El Dorado Ice & Planing Mill Co.* v. *Kinard; supra,* we held: "Where a party, originally not bound, has executed the contract, the doctrine relative to mutuality does not apply."

The court submitted the issue raised by the pleadings and the testimony in the case upon instructions which correctly presented appellant's theory of the case. Among these instructions was instruction No. 7, as follows: "You are instructed that, if you find from the

testimony that the defendant's agent, Thoma, had no authority to contract or buy logs for future delivery, but was only authorized to purchase logs on the bank of the river, and you further believe that Pete Thoma, the agent of the defendant, agreed with the plaintiff to take the logs in controversy after they had been delivered by the plaintiff at Lockhart, on the bank of Black River, at the price alleged in plaintiff's complaint, and that defendant, through its agent, accepted and boomed the logs in question, that would constitute an acceptance of the logs, and your verdict will be for the plaintiff.''

The court, however, after giving instructions which correctly presented appellant's theory of the case, gave, at the instance of the appellee, among others, the following instructions: "No. 3. You are instructed that, if you find from the testimony that Thoma was buying timber under the direction and authority of Massey, the general agent of the defendant, to procure logs, and that his instructions from Massey were to buy only logs on the bank and for immediate payment, then he was a limited or special agent, and could not bind the defendant beyond his authority, and, if you so find, your verdict will be for the defendant.''

These instructions were in conflict, because instruction No. 7, in effect, told the jury that, if Thoma was authorized to purchase logs on the bank of the river, and agreed with appellant to take the logs after they had been delivered by appellant on the river bank, at the price mentioned in the complaint, and accepted and boomed the logs, the appellee would be liable, while instruction No. 3 told the jury, in effect, that, if Thoma had been instructed to buy only logs on the bank of the river and for immediate payment, he was a limited or special agent, and, if the jury so found, their verdict would be for the appellee. It is impossible to reconcile these instructions. Instruction No. 7, given at the instance of the appellant, was a correct declaration of law under the testimony adduced both by the appellant and the appellee.

Instruction number three was also in conflict with other instructions, in which the court told the jury that the apparent authority of an agent is that which, though not actually granted, the principal knowingly permits the agent to exercise, or which he holds him out as possessing, and that the principal would be bound by the act of his agent within the scope of his actual authority and within the apparent scope of his authority. Instruction No. 3 was not only in conflict with these instructions, but it was calculated to confuse and mislead the jury by telling them that, if Thoma was a limited or special agent, then he could not bind the defendant beyond his authority as such agent, whereas the law is as announced by this court in *Pierce* v. *Fioretti,* 140 Ark. 306, where we said: ''Apparent authority in an agent is such authority as the principal knowingly permits the agent to assume, or which he holds the agent out as possessing; such authority as he appears to have by reason of his actual authority which he has, such authority as a reasonably prudent man, using diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess.'' And in *Three States Lumber Co.* v. *Moore,* 132 Ark. 371, where we said: ''The law is that an agent, acting within the apparent scope of his authority, though in violation of specific instructions, may bind his principal in dealing with one who has no notice of the restrictions upon the agent's authority. An exception to the rule is that, where the agency is special and not general, that is to say, where his authority is to be confined to a single transaction or to a particular act, there is no presumption as to the general authority, and one dealing with him must ascertain the extent of his authority. But one dealing with an admitted agent has the right to presume, in the absence of notice to the contrary, that he is a general agent, clothed with authority coextensive with its apparent scope.''

For the error in giving appellee's prayer for instruction No. 3, the judgment will be reversed, and the cause will be remanded for a new trial.