FULTON FERRY & BRIDGE COMPANY v. BLACKWOOD.

Opinion delivered April 11, 1927.

1. BRIDGES—JURISDICTION OF THE COUNTY COURT.—Acts 1925, authorizing the State Highway Commission to build a toll bridge across a navigable river to connect with the existing highway *held* not invalid within Const., art. 7, § 28, giving the county court exclusive jurisdiction of county bridges, either because the act fails to provide for approval of the bridge plans by the county court or for the county to take over its control on its completion.

2. BRIDGES—TOLLS NO TAX ON PUBLIC.—An exaction by way of tolls on users of a toll bridge is not a tax on the general public, being a tax only on those who use the bridge.

3. BRIDGES—DELEGATION OF POWER TO CONSTRUCT.—The Legislature may delegate to the State Highway Commission the power to construct or improve and maintain a toll bridge on an existing highway, without infringing on the jurisdiction of the county court.

4. BRIDGES—VALIDITY OF FRANCHISE TO BUILD TOLL BRIDGE.—Where two adjoining counties granted a franchise to build a toll bridge over a navigable boundary stream upon a condition precedent that the consent of the Federal Government should be obtained, which was denied when Congress granted a conflicting franchise to the State Highway Commission by act of February 4, 1926, the consent of one party to the franchise granted by the two county courts was lacking, and neither party thereto was bound.

5. EMINENT DOMAIN—AUTHORITY OF STATE TO CONDEMN CONFLICTING FRANCHISE.—Under Acts 1925, p. 384, authorizing the State Highway Commission to build a toll bridge over a certain navigable river, and to condemn lands and any existing franchise necessary to the construction of the bridge, the Highway Commission was authorized to condemn and take over lands, and any existing franchise, rights or easement necessary therefor.

6. EMINENT DOMAIN—DELEGATION OF POWER.—Whenever public convenience or necessity is involved, the Legislature may delegate to a public agency the right of condemnation of property.

7. BRIDGES—REASONABLENESS OF TIME LIMIT.—A time limit of five years to begin construction of a county bridge *held* unreasonable.

8 CONSTITUTIONAL LAW—CONTRACTS SUBJECT TO RIGHT OF EMINENT DOMAIN.—Exercise by the State of the right of eminent domain does not interfere with the inviolability of contracts for the reason that all property is held by tenure from the State and all contracts are made subject to the law of eminent domain.

Appeal from Pulaski Chancery Court; *T. M. Mehaffy,* Special Chancellor; affirmed in part.

*J. D. Head* and *Rose, Hemingway, Cantrell & Loughborough,* for appellant.

*H. W. Applegate,* Attorney General, *O. A. Graves, W. H. Arnold, W. H. Arnold, Jr.,* and *David C. Arnold,* for appellee.

McHANEY, J. On December 15, 1923, the county courts of Miller County and Hempstead County, Arkansas, by separate identical orders, granted a franchise to J. B. Shults and George T. Conway to build a toll-bridge across Red River, a boundary stream between said counties, "at the point where the improved road from Texarkana to Hope now crosses said river at the town of Fulton, or at such other point for crossing said river by a changed route of said highway as may be found necessary for engineering purposes, or as may be required by Government authorities in the interest of navigation." Said courts made separate findings of fact, in identical language, to the effect that such bridge would be of great benefit to the citizens of these counties, the State and that part of the traveling public having occasion to cross Red River at said point; that the expense of such a project was too great and burdensome for the counties and for the adjacent property, if taxed therefor; and that the petitioners were suitable and competent persons to do so. Said courts, based on said findings, entered their separate orders granting to said Shults and Conway, "their heirs, executors, administrators and assigns," "the exclusive right, privilege and franchise to construct, maintain and operate a toll-bridge for highway purposes over and across the Red River at said point," some of the conditions thereof being as follows: that same shall be in force and effect for 49 years; that the exclusive privilege shall extend for three miles on either side of said bridge, measured along the channel; that said courts will not grant a franchise to build a bridge to any other person on said river in said three miles for the term of 49 years, nor will said courts build such a bridge, either separately

or jointly; that no ferry license shall be granted in said distance for said term; that the right to sell, assign and transfer is granted on certain conditions; that the rate of tolls shall be from 5 cents for pedestrians to $1 for automobiles, driver, and not exceeding seven passengers, with special rates for trucks of $1 for 1½ tons and $1 additional per added ton; that said rates cannot be changed for a period of twenty years, and then only on a joint agreement of both courts, and, if they cannot agree, the chancery court may fix them, and then they must be fixed to grant a "reasonable and proper return per annum upon the investment in said bridge," approaches, abutments, etc., allowance for depreciation, cost of operation, repair, etc; that they shall begin construction in three years after acceptance of the franchise, and shall complete same in three years after construction begins, but time for completion may be extended by said courts on proper showing; that they shall, within two years from date, execute a bond for $10,000 to the county clerk of Hempstead County for the use and benefit of Hempstead County, "conditioned for the beginning and completion of said bridge within the time hereinbefore mentioned, otherwise this franchise to be null and void." A number of other conditions and stipulations are contained in said orders, but we do not deem it necessary to set them out here. On the same date, December 15, 1923, Shults and Conway accepted said franchise in writing to each of said courts, and, on the same day, appropriate orders confirming such acceptance were entered by each of said courts.

The franchise above mentioned was assigned by Shults and Conway to the appellant, Fulton Ferry & Bridge Company, a corporation, and on October 6, 1924, the county court of Hempstead County, on the petition of appellant, extended said "franchise and privilege," as above granted, "for a period of two years from and after the date of the approval of Congress and other governmental body, granting the said Fulton Ferry and Bridge Company the right to construct said bridge, and if the said Fulton Ferry & Bridge Company does not start con-

struction of said bridge in two years from date of said approval of Congress and other governmental bodies, then this franchise is to be null and void; otherwise to remain in full force and effect as called for in said franchise.'' The county court of Miller County made substantially the same order on October 20, 1924, with this proviso: ''Provided that, if the said Fulton Ferry & Bridge Company does not start construction of said bridge within two years from the date of said approval by Congress and other governmental bodies, then said franchise is to become null and void; otherwise to remain in full force and effect, as called for in said franchise; provided further, this extension shall terminate upon the expiration of five years from date hereof, in any event, unless the construction of said bridge shall be sooner begun.'' These orders of extension were made upon petition which said: ''Your petitioner shows to the court that it has endeavored, in good faith, to begin the construction of said bridge, and to that end has secured the introduction in the Congress of the United States a bill authorizing the building and construction of said bridge, but that so far it has been unable to secure the passage of said bill or to secure authority to begin the construction of said bridge from the proper authorities of the United States Government, although it has made diligent efforts so to do; the said Red River being a navigable stream, and the authority of the Congress to erect a bridge over and across the same being required by law. Due to the fact that it required congressional authority or the passage of a bill authorizing the construction of said bridge before petitioner can begin work thereon, and the further fact that it has not yet been able to secure such authority * * * will not be able to obtain such authority for more than a year hereafter,'' petitioner prays for an extension of two years' time.

At the special session of the Legislature in 1923, an act was passed and approved authorizing the above procedure. It is act 22, page 146, Special Session of 1923, entitled, ''An act authorizing privileges for building toll

bridges over watercourses between counties," approved October 15, 1923. Thereafter, at the regular session for 1925, an act was passed authorizing and directing the State Highway Commission to build a bridge across Red River in Hempstead and Miller counties, at a point within five miles of the Missouri Pacific Railway bridge across Red River at Fulton, Arkansas, not to cost exceeding $500,000, including cost of condemnation of lands, purchase of any existing franchise, and all other expenses. This is act No. 136, page 384, Acts 1925, approved March 6, 1925.

This action was brought in the Pulaski Chancery Court by appellants, Fulton Ferry & Bridge Company, asserting rights under its franchise and as a property owner in both counties, and certain other property owners in said counties, against Herbert R. Wilson, Highway Commissioner, and the then members of the State Highway Commission, to enjoin them from taking any steps to build said bridge under act 136 of 1925. Dwight H. Blackwood, successor to Herbert R. Wilson, and the new members of the Highway Commission, as successors to the former members, have been substituted as appellees here. Substantially the facts as above set forth relative to said franchise were set up, and it is charged, in addition, that act 136 of 1925 is unconstitutional and void, in that it is in conflict with § 28, art. 7, of the Constitution of Arkansas. Appellees filed an answer and cross-complaint, denying the invalidity of said act 136, and charging the invalidity of the franchise on many grounds, some of which will be hereafter referred to, and prayed that they be declared void, and that appellant be enjoined from asserting or making a claim under said franchise in conflict with the rights of appellees under act 136 of 1925, and under the act of Congress of 1926 granting to appellees the right to build said bridge.

The chancery court, after hearing all the evidence and arguments of learned counsel, entered a decree dismissing the complaint of appellants and the cross-com-

plaint of appellees for want of equity, and both parties have appealed to this court.

The transcript in this case is a very large one, consisting of 1,622 pages, in four volumes. The evidence is directed very largely to. the question of whether Red River at, above and below Fulton is navigable. The chancellor found that the preponderance of the evidence showed Red River to be navigable at Fulton. Both parties to this litigation have so regarded it in the past —appellant, Fulton Ferry & Bridge Company, so regarded it when, in October, 1924, it petitioned the county courts of Hempstead and Miller counties to extend its franchises in the language heretofore quoted; and appellees are so insisting here. Both parties have applied to Congress for authority to build this bridge, same being granted to the appellees by an act approved February 4, 1926, entitled "An act granting the consent of Congress to the State Highway Commission of Arkansas to construct, maintain and operate a bridge across Red River near Fulton, Arkansas," and the authority of appellant to build same has been denied. We have also carefully examined the evidence on this question, and have reached the conclusion that perhaps the fair preponderance of the evidence is in favor of the findings of the chancellor—at least we cannot say that it is against the clear preponderance of the evidence.

But we do not regard the question of the navigability of Red River at Fulton of controlling importance in the case.

The serious and most important question we have to deal with in this case is the validity of act 136 of 1925, tested by § 28 of art. 7 of the Constitution of 1874, and the former decisions of this court construing said section of the Constitution. It is as follows:

"The county courts shall have exclusive original jurisdiction in all matters relating to county taxes, roads, bridges, ferries, paupers, bastardy, vagrants, the apprenticeship of minors, the disbursement of money for county purposes, and in every other case that may be

necessary to the internal improvement and local concerns of the respective counties. The county court shall be held by one judge, except in cases otherwise herein provided.''

This section of the Constitution is found in article 7, which deals entirely with the judicial department and matters incidental thereto. The jurisdiction of the several courts is defined, from the Supreme Court on down to justices of the peace.

The act is too long to copy in full in this opinion. It authorizes and directs the Highway Commission to build this bridge; fixes the maximum cost; provides that it shall be a toll-bridge; fixes the tolls for ten years, and thereafter to be fixed by the commission. Also that, when the bridge is paid for, it shall be toll-free, except sufficient to operate it and keep it in repair. State and Federal aid are provided for, together with the power of the commission to borrow money to pay the cost thereof. Section 5 is as follows:

''The State Highway Commission is given authority to borrow money in such sums as may be necessary to construct said bridge with the roads and approaches to connect said bridge with the existing highway from the city of Hope, in Hempstead County, to the city of Texarkana, in Miller County; and also to pay such sums as may be needed or necessary for the purchase or condemnation of lands for right-of-way for said bridge, roads and approaches, including the right to purchase or condemn any existing franchise, right or easement necessary in the construction of said bridge.''

Other provisions are for the sale of the notes or bonds, rate of interest and the security. A clause in § 8 provides: ''Provided, however, that nothing in this act shall give the State Highway Commission authority to pledge the credit of any county or the State for the indebtedness incurred in building said bridge; and provided further, that the lands adjacent to said bridge, except approaches, shall not be liable for any part of the construction price of said bridge for its maintenance, and

that the bridge and its approaches, together with the tolls collected from said bridge, shall be the sole security for the notes or bonds herein authorized. And said bonds or evidences of indebtedness shall give notice in appropriate language of the limitations of the trust."

It is earnestly insisted by learned counsel for appellant that the act is unconstitutional for the reason that it does not recognize the jurisdiction of the county courts of these counties, either in the approval of the plans or taking over its control on completion, and for the further reason that it provides for the payment of the cost of the bridge by tolls, which is an exaction on the general public.

Let us now examine this act carefully in the light of the former decisions of this court to determine whether this contention is logical and well founded.

In § 5 "the State Highway Commission is given authority to borrow money in such sums as may be necessary to construct said bridge with the roads and approaches to connect said bridge *with the existing highway from the city of Hope, in Hempstead County, to the city of Texarkana, in Miller County.*" It will therefore be seen that this bridge is to be built on an *"existing highway"* running through the State of Arkansas, from Memphis *via* Little Rock to Texarkana, and, as shown by the evidence, one of the main national highways, from the Atlantic seaboard on the east to the Pacific Ocean at San Diego, on the west. Who laid out this "existing highway from the city of Hope, in Hempstead County to the City of Texarkana, in Miller County"? The county courts of Hempstead and Miller counties laid out this "existing highway," and in doing so exercised their "exclusive original jurisdiction." The county courts of both said counties have also laid out a site for said bridge. In making the orders granting appellant the franchise heretofore mentioned, they each provided that said bridge should be located *"at the point where the improved road from Texarkana to Hope now crosses said river at the town of Fulton."* The site for the bridge has

therefore already been located by said courts, and in doing so they have exercised their constitutional jurisdiction.

It was further provided in said orders locating said bridge that it might be located at that point, "or at such other point for crossing said river by a changed route of said highway as may be found necessary for engineering purposes or as may be required by Government authorities in the interest of navigation." So it will be seen that there has been an exercise of the constitutional jurisdiction of both county courts in making a definite location of said bridge with such deviation from the actual point as may be found necessary for engineering purposes or as may be required by Federal authorities in the interest of navigation, and the act of Congress granting this right to the Highway Commission recognized this necessity by providing that such bridge might be built within five miles of the Missouri Pacific bridge at Fulton.

Turning, now, to the decisions of this court on similar questions, we find the same contention made as urged here in a number of cases involving the constitutionality of acts creating improvement districts for the construction of roads and bridges on existing highways. *Shibley v. Fort Smith & Van Buren District,* 96 Ark. 410, 132 S. W. 144, decided in 1910, involved the validity of an act of 1909 creating an improvement district to construct a free bridge across the Arkansas River between Fort Smith and Van Buren, by levying an assessment on the property in the district to cover the cost. The Arkansas River is a navigable stream, and it is the boundary between Sebastian and Crawford counties. It was urged that the act was repugnant to § 28, art. 7, of the Constitution in that it invaded the jurisdiction of the county courts. In referring to the case of *Road Improvement Dist. No. 1 v. Glover,* 89 Ark. 513, 117 S. W. 544, the court said: "It was not held that the Constitution withholds from the Legislature the power to authorize the construction, as local improvements, of new roads to be paid for by assessments on property to be

benefited, nor is there a justifiable inference to be drawn from the decision that the court should hold that the Legislature cannot authorize the construction of a bridge as a local improvement. The reason given by the court for the ruling was that to put the whole county into a road improvement district would be to substitute the commissioners or board of directors for the county court in the exercise of jurisdiction over the roads, and that it would be a usurpation of the county court's jurisdiction to authorize the construction of a new public road as a local improvement and thrust it upon that court for maintenance as a part of the public road system of the county. We perceive no sound reason why the Legislature may not, without trenching upon the jurisdiction of the county court, authorize the construction of new roads and bridges as local improvements. It does not impose upon the general public the burden of maintaining the improvement, nor does it fasten upon the county court the duty of supervising and maintaining the new road or bridge as a part of the internal affairs of the county. The statute now under consideration, by its express terms, is rescued from such an objection, for it provides that the county courts of said counties *may* take over and acquire the bridge after it has been constructed, and maintain it as a public highway, but that, in the event the county courts do not decide to take it over, then it shall be maintained by levying annual assessments on the property benefited. It is left entirely optional with the county courts of the two counties whether or not the control of the bridge shall be taken over, and this provision leaves unimpaired the jurisdiction of the county court over the bridge when it has seen fit to exercise that jurisdiction.

"This conclusion leaves out of consideration the fact that the bridge is to span a navigable river which is the boundary between two counties, and that it is not and can not be wholly within the jurisdiction of the county court of either county. The result would be the same if it were a bridge to be erected wholly within the bounds of

one county; for we are of the opinion that, even under those circumstances, its construction may be authorized as a local improvement.    The construction of an improvement under those circumstances would not be an invasion of the jurisdiction of the county court.''

If the Highway . Commission builds this bridge, it will ''not impose upon the general public the burden of maintaining the improvement, nor does it fasten upon the county court the duty of supervising and maintaining the new road or bridge as a part of the internal affairs of the county.''    Eminent counsel for appellant stated, in oral argument, that, if the act in question had directed the construction of this bridge by the Highway Commission free of tolls, it would not be repugnant to the Constitution.    We cannot agree that an exaction by way of tolls on the users of said bridge is a tax on the general public. It is a tax only on such part of the public as finds it necessary or convenient to use the bridge, just as the tax on gasoline is a toll charge for the privilege of using the roads.    The gasoline tax is not a tax on the general public, but only on such part of the public as drive motor vehicles over the highways.    If a person does not own an automobile he pays no tax.    There are probably hundreds of persons in each county who will never have occasion to use this particular bridge, and will therefore pay no tolls.    No funds of either county will ever be required, either in construction or maintenance, and no tax will be levied in either county for any purpose connected therewith.    True, there is no provision in the act authorizing the county court to take over this bridge at any time, but such a provision is not necessary to its constitutionality, and it is contemplated that the State Highway Commission forever thereafter shall control, operate, repair and maintain same.    In *Conway* v. *Miller County Highway & Bridge Dist.*, 125 Ark. 325, 188 S. W. 822, the question was the authority of the improvement district. embracing lands lying wholly in Miller County, to build roads and a bridge across Red River. at the same location as in this case, from the Miller County side to the Hempstead

County side, and this court said: "The fact that the bridge spans the boundary line of the county does not make an invasion of the jurisdiction of the county courts of either of the counties."

In *Easley* v. *Patterson,* 142 Ark. 62, 218 S. W. 381, this court said: "This statute does not, however, contain any provision that the plan for the improvement must be submitted to and approved by the county court, and it is contended that this constitutes an invasion of the county court's jurisdiction. We have never had that question before us for decision, and now for the first time the ques-tion is squarely presented whether or not an improvement district created by statute can be authorized to make improvements on public highways without obtaining the. approval of the county court. Our conclusion is that the authority to improve a public highway does not invade the jurisdiction of the county court. The road is a pub-lic highway, but the improvement is for the betterment of the contiguous lands. The improvement of the road does not in any sense constitute an interference with the general control of the county court over public highways. The authority of the board of commissioners is to bring about a betterment of the highway."

And in *Johns* v. *Road Improvement Districts of Bradley County,* 142 Ark. 73, 218 S. W. 389, the court said: "It is not true, as contended, that the statute in question invades the province of the county court in authorizing the commissioners to lay out and improve roads not already established as public highways. In describing the various roads in the two districts, the statute does not in each instance refer to the roads as public highways, but it is fairly inferable that they were found by the framers of the statute to be public highways, and there is no show-ing made in this case that they were not public roads; on the contrary, the proof adduced in the case shows that they are public roads. It is not essential to the validity of the statute that they should be described therein as public roads."

The effect of the holding of these decisions and various others that might be cited is that the Legislature may delegate to an independent agency, such as an improvement district, or to the State Highway Commission, the authority to take over, improve, repair and maintain an existing highway or a bridge thereon without trenching upon the jurisdiction of the various county courts of this State, so long as the proposed improvement exacts no tax from the general public and requires no expenditure of the county's funds for such purposes. This does not in any way interfere with the jurisdiction of the county courts. While in many of the cases coming before this court it has not been the unanimous opinion of this court that the acts of the Legislature in question did not invade the jurisdiction of the county courts, none of the dissenting opinions have ever gone so far as to hold that the Legislature might not delegate to another agency of this State the power to construct or improve a road or bridge over an existing highway. And from the decisions heretofore cited, and from many others too numerous to mention herein, we are of the unanimous opinion that the act in question, authorizing the State Highway Department to construct this bridge, does not invade the jurisdiction of the county courts of Hempstead and Miller counties, either in the failure of the act to provide for a submission of the plans for same to said county courts, or in providing for the taking over of said bridge by said county courts. But the act does recognize the jurisdiction of the county courts in that it provides that said bridge shall be located on the present highway from Hope, in Hempstead County, to Texarkana, in Miller County, and the provision therein for the exaction of tolls from the users of said bridge until same is paid for, and that thereafter it shall be toll-free except for the actual cost of maintenance, is not a tax upon the general public, but only on such part of the public as may find it convenient or necessary to use said bridge. The payment of tolls for the use of said bridge is no more

a tax on the general public, indeed not so much so, as a tax on betterments assessed upon lands embraced in an improvement district created for the purpose of building such a bridge. The result of our deliberations is therefore that the act in question does not offend against § 28 of article 7 of the Constitution, and is therefore a valid exercise of legislative powers.

It is next suggested that, even "if act 136 of 1925 is valid and sufficiently operative to construct the bridge from a practical standpoint, the contract rights of plaintiff set forth in the franchises are destroyed." Let it be conceded that, under §§ 10255-6-7-8 of Crawford & Moses' Digest, and by act 22 of the special session of 1923, which was passed before the granting of franchises in controversy, the county courts had authority to grant franchises to build bridges over county boundary streams, and the county courts of Hempstead and Miller counties have in this instance granted franchises, or a franchise, to appellant to build the bridge in question, still, since Red River at Fulton is a navigable stream, and, the consent of the Federal Government being a condition precedent, such franchise or contract rights have not ripened into maturity. So far as the State of Arkansas is concerned, the franchises already granted appellant are valid, but the consent of Congress to the building of such a bridge by appellants having been denied by the passage of the act of February 4, 1926, granting the consent of Congress to the Highway Commission to build said bridge, leaves the consent of one of the necessary parties to the contract lacking, with neither party bound by the terms thereof.

But, assuming for the sake of argument that Red River is not a navigable stream and that the franchises in question are entirely valid, still the Highway Commission would have the right, under act 136 of 1925, and under the general powers of condemnation in this State, to condemn and take over for public use not only the "lands for right-of-way for said bridge, roads and approaches," but also "any existing franchise, right or

easement necessary in the construction of said bridge.''
The power of the Legislature would not extend to the
condemnation and taking over of such property, includ-
ing franchises, for private use, nor could it transfer same
to any other individual, firm or corporation, but, when-
ever the public convenience or necessity is involved, the
power of the Legislature to delegate to a public agency
power of condemnation of private property for public
use is supreme.

Furthermore, the franchise granted by Hempstead
County is unilateral, and the time limit fixed in the Miller
County part of the franchise for performance is unrea-
sonable. The time for commencement of the building
of the bridge under the Hempstead County order was
''extended for a period of two years from and after the
dates of approval of Congress and other governmental
body granting the said Fulton Ferry & Bridge Company
the right to construct said bridge.'' Appellant's obliga-
tion therefore is conditioned upon its getting the approval
of Congress and the consent of other governmental
agency, and such approval and consent are too vague and
uncertain to bind the appellant to ever construct the
bridge or to perform its part of the contract. In other
words, there was no mutuality of obligation. *Slayden* v.
*Augusta Cooperage Co.*, 163 Ark. 638, 260 S. W. 74; *El
Dorado Ice & Planing Mill Co.* v. *Kinard*, 96 Ark. 184,
131 S. W. 460; *Grayling Lumber Co.* v. *Hemingway*, 124
Ark, 354, 187 S. W. 327; *St. L. I. M. & S. R. Co.* v. *Clark*,
90 Ark. 904, 119 S. W. 825.

The provision in the Miller County franchise con-
tained in the order of extension provided that the ''exten-
sion shall terminate upon the expiration of five years
from the date hereof in any event, unless the construc-
tion of said bridge shall be sooner begun,'' is unreason-
able and void in that it requires nothing to be done
toward the construction of said project for a period of
five years. Whether the franchise would be void on
account of the unreasonable time and tolls granted
appellant in said franchise we do not deem it necessary

to determine in this case. In the case of *White River Bridge Co. v. Hurd,* 159 Ark. 652, 252 S. W. 917, which was a case involving the right of the county court to fix the tolls on a bridge over White River, where the court had granted a franchise for a period of ten years, this court said: "Therefore we have concluded that any apparent ambiguity in the statute is made certain when interpreted according to the evident purposes of the act, and are of the opinion that the act conferred upon the county court the power, not only to grant the franchise, but to fix the toll for the first ten years of the life of the franchise. There is nothing in the record to show that the fixing of tolls for this period of time would be unreasonable or arbitrary."

But, if we desired to go into this question, there appears to be ample evidence in the record that the return allowed by reason of the tolls fixed in the franchise, based upon an estimated cost of the bridge of $300,000 by eminent engineers, would be an unreasonable exaction on the users of said bridge, and it might be void for this reason. Since, from what we have said heretofore, it necessarily follows that appellants have acquired no valid rights by reason of the franchise attempted to be granted by the county courts of Hempstead and Miller counties, it becomes unnecessary to go into this question fully.

This is the view of the matter taken by the Supreme Court of the United States. In the *West River Bridge Co. v. Dix,* 6 Howard (U. S.) 507, it was held that a bridge owned by an incorporated company, under a charter from a State, may be condemned and taken as a part of a public road, under the laws of the State.

It was further held that, in such a case, the charter is a contract between the State and the company, but, like all private rights, it is subject to the right of eminent domain in the State. The exercise of the right of eminent domain does not interfere with the inviolability of contracts, for the reason that all property is held by tenure

from the State, and all contracts are made subject to the right of eminent domain.

It necessarily follows, from what we have heretofore said in this opinion, that it is within the power of the Legislature to grant to the State Highway Commission, or to any other State agency, the right to enter upon, take over, construct, improve and repair any existing public highway as a part of the State highway system, and to construct, maintain and repair any bridges thereon, whether publicly or privately owned, so long as it does not involve the levying of a tax on the general public for such purposes, and, if privately owned, compensation for the taking of private property for public use will necessarily have to be made in accordance with the proceedings now provided by law.

. The decree of the chancery court is therefore affirmed, except in so far as it held that appellants have a valid franchise, and in this respect it is reversed and the cause dismissed.

MEHAFFY, J., not participating.