| 46 | 17 |
| 55 | 85 |
| 46 | 17 |
| 57 | 374 |
| 46 | 17 |
| 59 | 179 |
| 46 | 17 |
| 61 | 35 |
| 62 | 341 |
| 46 | 17 |
| 64 | 488 |
| 46 | 17 |
| 81 | 333 |
| f82 | 244 |
| 46 | 17 |
| 86 | 73 |
| S6 | 74 |
| f88 | 50 |

---

## SMITH v. HOLLIS.

1. PRACTICE IN SUPREME COURT: *Bill of exceptions.*
An agreed statement of the facts in the trial court must be brought to this court by bill of exceptions, or be otherwise identified by an order of the court as the veritable agreement upon which the case was tried, or it will form no part of the record.

2. SAME: *Motion for new trial, when necessary.*
A motion for new trial is as necessary in trials by the court, as in those by a jury; and as well where the facts are agreed on as where they are proved by witnesses; but is not necessary at all, when the errors complained of do not grow out of the evidence or instructions, but appear upon the record itself, without the intervention of a bill of exceptions.

3. SAME: *Same. Judgment inconsistent with facts found.*
When the judgment of the circuit court is inconsistent with the special facts found by the court, this court will reverse it, though no motion for new trial be made, nor bill of exceptions taken in the trial court.

2–46

4. SWAMP LANDS: *What are?  Decision of Interior Department.*
Whether lands selected as swamp and overflowed are of that character is a question of fact; and the decision of the Interior Department of the government rejecting the selection is final and conclusive that they are not.

5. TAXES: *When lands subject to.*
Lands entered in the proper land office of the United States become subject to taxation from the issuance of the certificate of entry and payment of the purchase price, without regard to the issuance of the patent.

6. TITLE: *Government entries.  Tax titles, etc.*
In 1860 A entered and paid for the land in controversy at the proper government land office. It had been selected but not confirmed to the state, as swamp land. In 1878 the commissioner of the general land office at Washington canceled A's entry as erroneously made, and refunded to him his entrance money; but before the cancellation the land had been taxed in A's name, and sold for the taxes and purchased by B; and after the cancellation B received the tax deed for it. Afterward, in 1882, the commissioner of the general land office at Washington set aside the selection of the land as swamp land, and thereafter C entered it under the homestead laws of the United States, and took possession of it, and B sued him in ejectment for it. *Held:* That the mere selection of the land as swamp land did not withdraw the land from sale, and the land not being swamp land (as must be assumed), A's entry was valid, and the land thereafter became subject to taxation, and the cancellation of A's entry and return of his purchase money did not impair the intervening tax purchase of B.

APPEAL from *Calhoun* Circuit Court.
Hon. B. F. ASKEW, Circuit Judge.

*Barker and Johnson,* for appellant.

If, at the time of said purchase by Yeager of said lands, they were not really swamp and overflowed lands, but dry lands, then they did not belong to the state, but to the the general government, and Yeager obtained a good title, which could not be afterward set aside by the government. *Mitchell v. Branch, 24 Ark., 431.*

If the lands were never swamp and overflowed, as the last proof shows, and upon this appellee claims title, then the entry of Yeager was good, and appellant's title should prevail; and they never passed to the state by any act of congress. *Mitchell v. Branch, supra;* and the selection by the state agent was null and void, and the entry of Yeager valid, and the government could not cancel the same, and its attempt so to do was void, unless the same was done by fraud, and no proof of fraud appears in this case. *Hill v. Plunkett, 41 Ark., 465; Bennett v. Pearl, 36 Ark., 471; Gunther v. Lawson, 31 Ark., 279.*

When the government parts with its title to its lands, it cannot cancel the same except for fraud, and the mere handing back the patent to the government of the heirs of Yeager passed no title; and besides this they had been sold to appellant for their taxes more than three years before that time; and no title remained in said heirs at the time, to pass, and the whole transaction was a nullity. The general government in such cases stands upon the footing of an ordinary individual. *Strawn v. Norris, 21 Ark., 80.*

If the lands were high and dry and not swamp and overflowed, at the time of Yeager's entry, then the sale was valid, and they at once became subject to taxation. *Cairo & Fulton R. R. v. Parke, 32 Ark., 131; Divers v. Friedheim, 43 ib., 203.*

When appellee established the fact, in 1883, that they were not swamp and overflowed, then confirmed the title of appellant, the government could not make two titles to the same land, and appellee's homestead entry was void.

*H. G. Bunn,* for appellee.

When Michael Yeager entered the land in controversy at the United States land office, it was then what is known as selected, but unconfirmed swamp land, and was not sub-

ject to sale or disposal in any way, and not being subject to sale, the sale thereof to Yeager was erroneous, and he had a right on discovering the error to ask that his entry be canceled, and his money be refunded; and his children and heirs had the same right after his death. This right they exercised; their father's entry was canceled and the purchase money repaid to them. The land officers had exclusive control of the matter, and their action in placing the land back on the books in its original condition—selected and unconfirmed swamp—after the repayment of the purchase money to Yeager's heirs, was such as they had the authority to take, and their action is conclusive in the premises, so far as anything appears in this case.

The land was never subject to taxation by the state authorities, simply because both the state and federal governments still had an interest therein. The taxation being wrong, of course the sale to appellant for taxes was wrong. Appellant acquired no vested rights at tax sale, for he was not an innocent purchaser, and could not be, but bought with his eyes open as do purchasers at all other execution (tax sale is an execution sale) sales.

The subsequent action of the land officers in taking proof as to the real character of the land, and holding it to be not swamp land, and subject to homestead entry by appellee, were all matters within their jurisdiction and control, and specially committed to them. Their action cannot be questioned collaterally, especially in the state courts.

SMITH, J. In this ejectment the plaintiff claimed under a tax deed based upon a sale for non-payment of taxes for the years 1874–5, and the defendant under a homestead entry. The issue was tried, by consent, before the court, without a jury, upon the title papers exhibited with the pleadings and an agreed statement of facts. The findings and

Smith v. Hollis.

judgment were for the defendant. The plaintiff excepted to the findings, opinion, ruling and judgment; but tendered no bill of exceptions, and did not ask for a re-trial. No special declarations of law were moved, and none were given by the court of its own motion.

A paper is copied into the transcript, marked filed by the clerk, and purporting to be an agreed statement of the facts submitted to the court; but not subscribed by the parties or their counsel. It is probable that the court accepted the facts so ascertained; but the paper itself constitutes no part of the record, not being certified to us by a bill of exceptions, nor identified by an order of court as the veritable agreement upon which the cause was tried. *Lawson v. Hayden*, *13 Ark.*, *316*; *Ashley v. Stoddard*, *26 ib.*, *653*; *Carroll v. Boyd*, *30 ib.*, *527*.

*1. PRACTICE IN SUPREME COURT:*
*Bill of exceptions.*

Besides, no motion for a new trial was made. We cannot, therefore, inquire whether the special findings of the court are supported by the stipulation as to facts, even if the stipulation had been preserved and came to us in proper form. The necessity for such a motion, in order to have errors of this nature reviewed, exists equally in cases submitted to the court and those submitted to a jury, and as well where there is an agreed statement of facts, as where the facts are proved by witnesses. *Gardner v. Miller*, *21 Ark.*, *398*; *Walker v. Swiggart, ib.*, *404*; *King v. Little Rock*, *26 ib.*, *479*.

*2. SAME:*
*Motion for new trial; when necessary.*

But a motion for a new trial is unnecessary where the errors complained of do not grow out of the evidence or instructions, but appear from the record itself, without the intervention of a bill of exceptions. *Steck v. Maher*, *26 Ark*, *536*; *Ward v. Carlton, ib.*, *662*; *Worthington v. Welch*, *27 ib.*, *464*; *Union County v. Smith*, *34 ib.*, *684*; *Douglass v. Flynn*, *43 ib.*, *398*.

3. SAME:
Judgment
inconsist-
ent with
facts found

The only question, then, raised by the appeal is: Does the judgment pursue the special findings; that is, conceding the facts to have been correctly found, does the legal consequence, deduced by the court, follow?

The court found that the lands in controversy were selected and unconfirmed swamp lands, not subject to entry, and as such were entered at the United States district land office at Champagnolle, Arkansas, in which district the same were situated, by one Michael Yeager, for the price established by law, as follows, to-wit: The northeast quarter of northwest quarter of section two, township fourteen south, of range sixteen west, on the 20th day of May, 1860; and the west half of northeast quarter of said section, on the 11th day of June, 1860; and that said entries were canceled as having been erroneously made, by the commissioner of the general land office of the United States, at Washington, D. C., in the year 1878; and that previously thereto the said lands had been taxed and forfeited and sold to plaintiff as the property of Michael Yeager, for the non-payment of the taxes thereon, under the laws of the state of Arkansas, as shown by exhibit "A" to the complaint. That subsequent to said cancellation plaintiff received his tax deed, said exhibit "A," upon which he based his claim herein, and subsequent to said cancellation the administrator of said Michael Yeager, then deceased, received from the United States government, through its proper officer, repayment of the purchase money paid by said Michael Yeager originally, as aforesaid. And that the selection of said lands as swamp and overflowed lands, under act of congress 28th of September, 1850, was duly set aside and canceled by the said commissioner of the general land office, on the 8th of June, 1882, and that said lands thereby and thereafter became subject to disposal accord-

Smith v. Hollis.

ing to the laws of the United States, and the rules and regulations of the general land office thereof; and being so subject to disposal, the defendant, W. T. Hollis, at the United States district land office at the town of Camden, in the state of Arkansas, the same being the proper land office for that purpose, did enter all of the aforesaid lands, being all of the lands in controversy, under the homestead laws of the United States, and received the receipt of the receiver of said district land office, showing the same, dated the 29th day of September, 1883, which receipt is filed with the answer herein as exhibit " A "; and by virtue of this said entry the defendant immediately took possession of said land, and was in possession of the same at the date of the commencement of this action.

And the court, upon consideration, was of opinion that the defendant, W. T. Hollis, by virtue of his said homestead entry, is the owner of said land as against all the world, save and except the United States, and is entitled to the possession of the same.

The validity of the plaintiff's title depends on the liability of the lands to taxation in the years 1874–5. And that again depends upon the fact whether at the time of the assessment for taxes, they were the property of the general government, or of an individual. The court declared that the lands were not subject to entry in 1860; but this is a conclusion of law, not the statement of a fact. It must be assumed that the greater part of the two tracts was dry land, and therefore that the tracts were not included in the grant made to the state by the swamp land act. For otherwise, neither of the parties, plaintiff or defendant, has the shadow of a title, but the lands belong to the state. In fact the decision of the Interior Department in 1882, rejecting the selection of these lands as swamp and overflowed, is final and conclusive. The char-

4. SWAMP LANDS: What are? Decision of Interior Department.

acter of the lands, whether wet or dry, was a question of fact; and the, act itself devolves upon the secretary of that department, the duty of determining the question. *John-son v. Towsly, 13 Wall.; 72; French v. Fyan, 93 U. S., 169.* And if the greater part of the two subdivisions was dry, at the date of the grant, the mere selection of them as swamp lands by the agents of the state, did not have the effect to withdraw them from sale. It only amounted to a claim that the lands were of the description granted by the act; which claim, upon investigation, proved to be unfounded. While it would have been eminently proper for the general land office to withdraw from the market lands so selected and reported, until such selections were either confirmed or rejected, yet this did not prevent the government from selling its lands. The state by compact entered into on its admission into the union, covenanted not to interfere with the primary disposition of the soil by the United States, nor with the regulations adopted by congress for securing titles to purchasers.

5. TAXES:
When
lands sub-
ject to.

It follows that the entries of Michael Yeager were valid. And as soon as he paid the price and received his certificates, the contracts of purchase became complete, the lands were segregated from the main domain and became private property, and therefore taxable. It is of no moment that the patent had not issued. The government held the naked legal fee in trust for the purchaser who had the equitable title. *Witherspoon v. Duncan, 21 Ark., 240;* affirmed on error, *4 Wall., 210; Diver v. Friedheim, 43 Ark., 203; Carroll v. Safford, 3 Howard, 441.*

We are not aware that the power of canceling entries is lodged in the commissioner of the general land office, or in any other officer, except where the land had been previously sold, or reserved from sale, by the United States. Neither of these causes existed here, as it appears, but only

a supposed conflict with a prior selection as swamp land.. We may infer that the cancellation was with the consent. or acquiescence of the legal representatives of Yeager.. But this would not destroy the intervening title of the purchaser at tax sale. The administrator and heirs of Yeager had themselves no interest in the premises in. 1878, unless it was a right to redeem from the tax sale.

Judgment reversed and cause remanded, with directions. to enter judgment for the plaintiff upon the special findings.