TEDFORD *v.* VAULX.

Opinion delivered February 16, 1931.

*John D. Shackleford,* for appellant.

*Eric M. Ross, Galbraith Gould* and *Rowell & Alexander,* for appellee.

MEHAFFY, J. W. L. Tedford, the appellant, instituted this action in the Jefferson Chancery Court to restrain the appellees from assessing, levying and collecting taxes on lands described in exhibit A to appellant's complaint. The appellant alleged that he purchased the lands described from the State of Arkansas on the 28th day of June, 1929, under act 129 of the Acts of the General Assembly approved March 13, 1929. It is alleged that appellants complied with the requirements of said act and obtained a deed from the State. It was further alleged that the lands were not certified by the State Land Commissioner back to the county clerk of Jefferson County until on or after December 2, 1929; that the taxing authorities extended against said lands an assess-

ment value in 1929 for payment of taxes in 1930 without authority of law and without right to do so; that the assessments were made by the assessor and extended on the tax books by the county clerk, and the assessments so made were turned over to the tax collector of said county for the purpose of collecting taxes in 1930; that he was attempting to collect said taxes, and, unless restrained, would return said property as delinquent without right and contrary to act 172 of the Acts of 1929.

The appellees filed answer denying each of the allegations of the complaint except their purpose to collect the taxes and alleged their right to assess and collect the taxes.

An amendment was filed making S. A. Cochran party plaintiff.

The case was tried in the chancery court on the agreement and stipulation that appellants purchased the property in question from the State of Arkansas on the 28th day of June, 1929, under act 129 of the Acts of the General Assembly of 1929; that these lands were as set out in the transcript, pages 14 and 15. Further, that the deeds executed by the State were filed for record on the 9th day of July, 1929, in the circuit clerk's office of Jefferson County; that the assessment records for Jefferson County were not closed by the tax assessor until the 19th of August, 1929; that the board of equalization was in session after the deeds were filed for record; that the lands described in the deeds were not certified back to the county clerk from the State Land Commissioner until the 3rd day of December, 1929; also that the assessment placed against the property for 1929 was made without appellant's consent or knowledge, and that the assessment was on the tax books and in the hands of the collector for the purpose of collecting taxes in 1930 for 1929.

The court entered a decree dismissing the complaint for want of equity, and the case is here on appeal.

The appellant contends first that the land would not be subject to taxation in 1929 under the old system un-

less it had reached the county clerk before the 2d day of December, which it is contended would be necessary in order to make 30 days before the commencement of the assessment of taxes for 1930. It is the contention of the appellant that the lands were not subject to taxation because the Land Commissioner did not certify the sale back to the clerk within time.

Appellants claim to have purchased the land under act 129 of the General Assembly of 1929, and this fact is not disputed. The lands were purchased under this act on the 28th day of June, 1929. On that date a deed was executed and delivered to the purchaser, and said deed filed for record on the 9th day of July, 1929.

All property in this State is subject to taxation except that specifically exempt from taxation by the Constitution. Section 5, art. 16, of the Constitution.

Section 6 of art. 16 reads as follows: "All laws exempting property from taxation other than as provided in this Constitution shall be void."

It therefore appears that the law-making power itself could not exempt the property from taxation unless it came within the exception mentioned in the Constitution.

Of course, while the property belonged to the State of Arkansas, it was not subject to taxation, and appellant contends that it did not become subject to taxation until the Land Commissioner had certified the list to the clerk of the county where the land was situated. To support this contention, they cite and rely on § 9925 of C. & M. Digest.

We do not agree with appellants in this contention. The lands became subject to taxation when the deed was executed and delivered to appellants. They, at that time, became the owners, and the land became subject to taxation.

This court said: "The lands were fully paid for by Wilson M. Belcher and certificates were therefore issued to him and from that date, they became subject to taxation unless otherwise exempt without regard to the issue of the patents of the State therefor." *Belcher* v. *Harr*, 94

Ark. 221, 126 S. W. 714; *Witherspoon* v. *Duncan*, 21 Ark. 240; *Driver* v. *Friedham,* 43 Ark. 203; *Smith* v. *Hollos,* 46 Ark. 17; *Burcham* v. *Terry,* 55 Ark. 398, 18 S. W. 458; Ex parte *Gaines,* 56 Ark. 227, 19 S. W. 602; see note to *C. H. Copp* v. *State of West Va.,* 35 L. R. A. (N. S.) 669; Cooley on Taxation, vol. 2, 1327.

When appellants received their deeds in June, 1929, the lands immediately became subject to taxation.

Appellant contends that the deed made to them by the State and placed on record was not official information upon which the county clerk had a right to list the lands, and that the statute, having provided the means by which the information is to be conveyed from the State Land Office to the county clerk, it is exclusive, and it is urged that until the county clerk receives the certificate from the State Land Office he is without authority to list the lands.

Act 172 of the Acts of 1929 expressly provides in § 15 that whenever the assessor shall discover that any property has been omitted for any cause from the assessment roll, if it be before the collector closes his books, it should be his duty to make an assessment and file same with the clerk. The assessor is not required to get his information from the land office, but if he discovers that property has not been assessed it is his duty under this act to make the assessment and report the same to the county clerk.

Section 17 of act 172 makes it the duty of the assessor to make personal inspection and examination of persons, property, or records. This property, as we have already said, became subject to taxation in June, 1929. The assessor had until the third Monday in August to file his report with the county clerk.

It appears from the record in this case that the appellants acquired title to this land, and that it was assessed for taxation while the equalization board was still in session, and application might have been made to the board for adjustment if the assessment was excessive.

Section 25 of act 172 provides that the board shall meet annually on the third Monday in August. That was about two months after these lands became subject to taxation.

Section 30 of act 172 provides that any property owner may, by petition or letter, apply to the equalization board for the adjustment of the assessment of his own property or that of another person as assessed by the county assessor, provided all applications shall be made to the board on or before the first Saturday next preceding the third Monday in September. This section also provides that any property owner may appeal from the action of the board, and such appeals must be filed on or before the second Monday in October.

The decree of the chancery court is affirmed.