The Honorable James C. Luker State Representative P.O. Box 216 Wynne, AR 72396
Dear Representative Luker:
This is in response to your request for an opinion regarding Act 1052 of 1997, which established a Deferred Retirement Option Plan ("DROP") for participants in the Arkansas Public Employees' Retirement System ("APERS"). You note that the APERS Board of Trustees ("Board") has adopted a form "Application for Participation" in the DROP, and you have asked several questions in this regard. Your specific questions are set forth and answered below in the order in which they were posed.
 1. Under what circumstances, if any, would Act 1052 of 1997 permit an employee who had elected the Deferred Retirement Option Plan to continue to work beyond the five year maximum?
Act 1052 does not specifically address continued employment, apart from the pronouncement that "[t]he election to participate in the [DROP] is irrevocable and the duration of participation in the [DROP] for active members shall not exceed five (5) years." Acts 1997, No. 1052, § 2(c). Clearly, the act would not permit an employee to continue to participate in the DROP beyond the stated five-year period. The act contemplates that the employee who elects to participate in the DROP will terminate his or her covered employment and retire from the System at some point within five years of entry into the DROP. The act does not, however, expressly prohibit continued employment. Nor does it provide a mechanism for terminating the employment of one who does not separate from service at the end of the five years.
In response to your specific question, therefore, it is my opinion that the permissible circumstances for continued employment are not delineated in Act 1052, presumably because it is assumed that the DROP participant will separate from service at the end of the five years, or earlier, in order to receive the DROP benefits. While it might be contended that the term "irrevocable" under the act means that under no circumstances is continued employment permissible, I believe this argument is untenable in light of the act's failure to provide a mechanism to force termination of employment. It is also apparent that the APERS Board has not interpreted the act to prevent continued employment. See discussion below in response to Question 3. And as discussed below, this interpretation is, in my opinion, reasonable.
 2. Does Act 1052 or any other applicable statute require an employer to remit to APERS all retirement contributions, plus interest, that would have been made on behalf of the employee had the employee not elected the Deferred Retirement Option Plan in the event that the employee does not terminate his or her employment after five years as required by law?
The answer to this question is "no." Act 1052 does not impose this requirement, nor has my research disclosed a separate statutory requirement in this regard. The APERS Board's imposition of this requirement is addressed in response to your next question.
 3. Does APERS have the authority to promulgate or enforce a regulation that would require an employer to remit APERS all retirement contributions, plus interest, that would have been made on behalf of the employee had the employee not elected the Deferred Retirement Option Plan in the event that the employee does not terminate his or her employment after five years as required by law in light of the language contained in Section 2(c) of Act 1052?
Although the answer to this question is not entirely clear from a reading of Act 1052, it is my opinion that the APERS Board in all likelihood has the authority to promulgate and enforce such a regulation. It is well-established that an administrative agency, while lacking the power to legislate, may determine the particular facts and circumstances upon which the operation of a legislative enactment is conditioned. SeeMcArthur v. Smallwood, 225 Ark. 328, 281 S.W.2d 428 (1955); Hogue v.Housing Authority of North Little Rock, 201 Ark. 263, 144 S.W.2d 49
(1940). It must also be recognized that the interpretation of a statute by the agency charged with its enforcement will be afforded great deference by the courts. Arkansas Department of Human Services v. GreenAcres Nursing Homes, Inc., 296 Ark. 475, 757 S.W.2d 563 (1988). It has been held that if the agency's construction is reasonable, courts must respect it, especially if the interpretation or construction enhances the general purposes and policies underlying the legislation. Murphy OilCorp. v. Hickel, 439 F.2d 417 (8th Cir. 1971). See also Brimer v.Arkansas Contractors Licensing Bd., 312 Ark. 401, 405, 849 S.W.2d 948
(1993) (stating that "[t]he construction of a statute by an administrative agency should not be overturned unless it is clearly wrong. . . .")
These precepts compel me to conclude that a regulation requiring the employer to remit to APERS all contributions if a DROP participant does not terminate employment after five years would, if challenged, likely withstand scrutiny. A regulation to this effect reflects the Board's interpretation of "irrevocable" to mean that having selected the DROP option, a participant must retire within five years in order to receive the DROP benefits. Extending participation in DROP beyond the five years is not permissible. Nor can a participant elect another retirement plan or change annuity options during the five-year period. If the participant retires within five years, it will be under the DROP. I believe this reasonably follows from Section 3(b) of Act 1052 wherein it provides that the member "shall be informed of the amount of his deferred option contribution and informed that his selection of the deferred retirement option, the time of the retirement deferral, and the selection of the retirement annuity are irrevocable."
Thus, the only way to get the DROP benefits is to retire as provided under the act. If a member does not separate from service after five years, he or she will forfeit the balance in the DROP account. See APERS Regulation 62-1997 (entitled "DROP Provisions"). This forfeiture requirement is reasonably imposed, in my opinion, pursuant to the Board's general authority to determine the facts and circumstances upon which the operation of Act 1052 is conditioned. See generally Smallwood, supra. The Board's general regulatory authority also provides the basis for requiring the employer's remittance of all retirement contributions that would have been made had the employee not elected to participate in the DROP. The Board has determined that the act does not prohibit a member from continuing to work after five years. Although the use of the term "irrevocable" is not entirely clear under the act, I cannot conclude that the Board's construction in this regard is clearly wrong. See generallyBrimer, supra. It may therefore be concluded, in my opinion, that the Board has not exceeded its authority in requiring the employer to pay the retirement contributions to APERS. This requirement, and the provision for adding retirement credit to the member's record for the DROP period (see Regulation 62, supra), effectuates the legislative intent as construed by the Board. And as noted above, the Board's interpretation will be afforded great deference, particularly if it enhances the general legislative purpose or policy. In this regard, the stated purpose of Act 1052 is "to maintain experienced public employees in the ranks of state and local government." Acts 1997, No. 1052, § 10 (emergency clause). Requiring that contributions be paid and providing service credit for an employee who does not terminate employment after the five years would, it seems, be in furtherance of this goal of retaining experienced public employees.
 4. May APERS require and enforce a contractual obligation on the part of an employer to remit to APERS all retirement contributions, plus interest, that would have been made on behalf of the employee had the employee not elected the Deferred Retirement Option Plan in the event that the employee does not terminate his or her employment after five years as required by law in light of the language contained in Section 2(c) of Act 1052?
I have concluded, as set out above in response to your third question, that a regulation requiring such remittance of contributions is likely within the Board's authority. The DROP Application and Regulation 62,supra, require the employer's acknowledgment of this requirement. While I must question the characterization of this acknowledgment as a contractual obligation, the main point is that regardless of how it is characterized, this requirement is, in my opinion, enforceable as part of the regulation.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.
Sincerely,
WINSTON BRYANT Attorney General
WB:EAW/cyh