The Honorable Allen Gordon, Co-Chairman The Honorable John Paul Capps, Co-Chairman Subcommittee on Administrative Rules and Regulations Arkansas Legislative Council State Capitol, Room 315 Little Rock, AR 72201
Dear Senator Gordon and Representative Capps:
This is in response to your request, on behalf of the Subcommittee on Administrative Rules and Regulations, for an opinion regarding the Arkansas Department of Finance and Administration Rules and Regulations implementing Executive Order 98-04 (effective July 1, 1998, hereinafter referred to as "Regulations"). The specific question posed by the Subcommittee in this regard is "whether the Department of Finance and Administration ["Department"] has exceeded the scope of its delegated authority in requiring persons to provide information as a requirement to receive any contract, grant, or employment with the state."[1] In addition, the Subcommittee asks "does the Department of Finance and Administration have authority to apply these requirements to colleges and universities?"
It is my opinion that the answer to your first question, regarding the disclosure requirements generally, is "no." The Department in my opinion has not exceeded its delegated authority in this regard. It is my opinion in response to your second question that although application of these disclosure requirements to colleges and universities presents a closer question, the Department's regulatory authority in the areas of public purchasing and public personnel probably forms a sufficient basis for imposing these requirements.[2]
It is of course well-established under constitutional "separation of powers" principles (Ark. Const. art. 4, §§ 2 and 3) that an administrative agency does not have the power to legislate and cannot substitute its own standards for those imposed by statute. Kettell v. Johnson Johnson,337 F. Supp. 892 (E.D. Ark. 1972). It is equally clear, however, that the legislature can delegate to an agency the power to determine the facts and circumstances upon which a law may operate. Campbell v. ArkansasState Hospital, 228 Ark. 205, 306 S.W.2d 313 (1957); Hogue v. HousingAuthority of North Little Rock, 201 Ark. 263, 144 S.W.2d 49 (1940). Seealso McArthur v. Smallwood, 225 Ark. 328, 331, 281 S.W.2d 428 (1955) (stating that "general provisions may be set forth with power given to those who are to act under such general provisions to complete the details.")
Applying these principles in this instance, I conclude from my review of the relevant laws relating to state purchasing and public personnel that the Department has properly promulgated these disclosure requirements pursuant to its authority and responsibility to administer the ethical mandates under these laws. Specifically, in the area of purchasing, Arkansas Code Annotated § 19-11-704 sets forth as a general prescribed standard of ethical conduct that "[a]ny attempt to realize personal gain through public employment by conduct inconsistent with the proper discharge of the employee's duties is a breach of public trust." A.C.A. § 19-11-704(a)(1) (Repl. 1998). See also A.C.A. § 19-11-703(b) (stating that "[p]ublic employees must discharge their duties impartially so as to assure fair competitive access to government procurement by responsible contractors[,]" and that "they should conduct themselves in such a manner as to foster public confidence in the integrity of the state procurement organization.") Specific ethical standards are also outlined in this subchapter. See A.C.A. §§ 19-11-705 (employee conflict of interest),19-11-706 (employee disclosure), 19-11-707 (gratuities and kickbacks),19-11-708 (contingent fees), 19-11-709 (restrictions on employment of present and former employees), and 19-11-710 (use of confidential information).
The Director of the Department is authorized and required to promulgate regulations to implement this subchapter. A.C.A. § 19-11-715(a) (Repl. 1998). The Director also has supervision and management authority over the office of State Purchasing located within the Department (A.C.A. §19-11-215); and the Director must approve regulations promulgated by the State Purchasing Director consistent with the State Purchasing Law (A.C.A. § 19-11-215 and -217). I thus conclude that the Department has not exceeded the scope of its delegated authority in requiring the disclosures reflected in the "Contract and Grant Disclosure and Certification" forms, the "Employee Disclosure Requirements Notice" and the "Employment Restrictions Notice." (See required forms at pages F1, F2, F5 and F6 of the Regulations). I believe the Department is authorized to require the information as part of its administrative function in finding the necessary facts and completing the necessary details in order to implement the ethical standards under the state purchasing laws.
With regard to the disclosure requirements in connection with application for public employment, the Code of Ethics (Subchapter 3 of Chapter 8 of Title 21) states as follows:
 (a) No public official or state employee shall use his position to secure special privileges or exemption for himself, his spouse, child, parents, or other persons standing in the first degree of relationship, or for those with whom he has a substantial financial relationship, that is not available to others, except as may be otherwise provided by law.
 (b) No public official or state employee shall accept employment or engage in any public or professional activity while serving as a public official which he might reasonably expect would require or induce him to disclose any information acquired by him by reason of his official position which is declared by law or regulation to be confidential.
 (c) No public official or state employee shall disclose any such information gained by reason of his position, nor shall he otherwise use such information for his personal gain or benefit.
A.C.A. § 21-8-304 (Repl. 1996).
The legislature has thus established a clear policy or standard relating to nepotism, ethics, or conflicts of interest which are applicable to state agencies and state employees generally. See A.C.A. § 6-43-114
(Supp. 1997). The relevant disclosure forms promulgated by the Department include reference to § 21-8-304. See Regulations, Forms F-3 ("Employee Disclosure and Certification Form") and F-4 ("Employment of Family Members"). It may reasonably be concluded, in my opinion, that the Department has not exceeded the scope of its delegated authority in requiring this disclosure. (See n. 1, supra, regarding the specific information to be disclosed). The Director of the Department is authorized under A.C.A. § 25-8-102(a) (Repl. 1996), with the approval of the Governor, to adopt rules and regulations "which he deems desirable for the effective administration of the Department of Finance and Administration and any of its divisions." The Office of Personnel Management is a division of the Department. A.C.A. § 25-8-103 (Repl. 1996). The Personnel Director is employed by the Director of the Department and the Office of Personnel Management is under the "overall direction, control, and supervision" of the Director. Id. It thus seems clear that the Department has the authority to adopt regulations for the administration of public personnel. Support for the Department's authority to require this disclosure in effectuating legislative intent under § 21-8-304 may also be found in the various provisions in Title 21 pertaining to public officers and employees. With regard, specifically, to positions affected by the Uniform Classification and Compensation Act (A.C.A. § 21-5-201 et seq.), the duties of the Office of Personnel Management include monitoring personnel transactions "to ensure that unqualified appointments, including new hires, promotions, and reductions in grade are identified." A.C.A. § 21-5-207(a)(9)(A). Questionable appointments are to be forwarded to the personnel administrator for further review. Id. at (a)(9)(B).
I thus conclude that requiring disclosure of this information to be eligible for public employment effectuates the legislative intent as expressed in A.C.A. § 21-8-304; and that, generally, these requirements fall within the Department's broad regulatory authority in the area of public personnel.
In response to your second question concerning the application of these requirements to colleges and universities, it is my opinion that the foregoing analysis regarding public purchasing applies with equal force in the case of contracts, grants, and subcontracts of such institutions. It seems clear that institutions of higher education are generally subject to regulations promulgated pursuant to the Arkansas Purchasing Law when expending public funds. See A.C.A. § 19-11-203(25) (definition of "[s]tate agency.") The Department's authority, discussed above, to implement the ethical standards in this regard clearly encompasses these institutions. See A.C.A. §§ 19-11-701(16) (defining "[s]tate agency") and19-11-717 (establishing a particular exception to the ethics prohibitions for certain contracts of higher education institutions involving patents, copyrights, or other proprietary information).[3] I thus conclude that the Department has authority to apply the contract and grant disclosure requirements to colleges and universities.
With regard to the employment-related information requirements (see "Employment Disclosure and Certification Form" and "Employment of Family Members," Forms F-3 and F-4 of Regulations), a similar analysis applies as with the contract and grant disclosures. These requirements reasonably follow, as a general matter, from the Department's administrative authority, discussed above, to execute and implement the ethical policies and standards under A.C.A. § 21-8-304. One possible exception should be noted in this regard, however. I am uncertain whether, if challenged, the Department would prevail in requiring colleges and universities to submit the "Employment of Family Members" documentation (see n. 1, supra) in connection with nonclassified higher education positions. The Uniform Classification and Compensation Act, as amended, applies to all affected employees of institutions of higher education. See A.C.A. § 21-5-202
(Repl. 1996). It seems clear, in my opinion, that the Department's authority to implement the ethical mandates under § 21-8-304 extends to these positions, by virtue of the Director's authority, noted above, over the Office of Personnel Management. But it is unclear whether this general authority with respect to administration of public personnel is a sufficient basis for imposing this employment information requirement in relation to nonclassified higher education positions.
I believe the question to be resolved in this regard is whether the authority to implement and execute A.C.A. § 21-8-304 (Code of Ethics) resides in the Director of the Department, or rather in the respective boards of trustees of these institutions. See generally A.C.A. §25-17-201 and -202 (Repl. 1996) (creating honorary boards of trustees with management and control of, inter alia, the University of Central Arkansas, Henderson State University, and Arkansas State University);see also A.C.A. §§ 6-64-201 to -203 (University of Arkansas Board of Trustees), and 6-65-301 and -302 (Arkansas Tech University Board of Trustees). This question may require resort to the courts, in the absence of legislative clarification, for a conclusive resolution. Because these institutions are not ordinarily viewed as being under the general control of the Governor (see generally Op. Att'y Gen. 98-105, enclosed herein), the Department's authority as regards employment matters concerning these institutions must in my opinion derive instead from some statutory delegation. Id. In the absence of such a delegation, it would seem that the institution boards of trustees, as the managing entities, and not the Department, have the authority to ensure compliance with the ethical standards.
In conclusion therefore, with the possible exception noted above concerning the employment of nonclassified personnel, it is my opinion that the Department has the authority to require disclosure of this information by colleges and universities.
Assistant Attorney General Elisabeth A. Walker prepared the following opinion, which I hereby approve.
Sincerely,
WINSTON BRYANT Attorney General
WB:EAW/cyh
[1] Under the Regulations, any non-exempt potential contractor, subcontractor, grantee or employment applicant must disclose whether that individual is a member of the Arkansas General Assembly, a constitutional officer, a board or commission member, a state employee, or the immediate family member, including the spouse, of any of the above. Entities desiring to enter into or renew contracts or receive grants must disclose whether anyone in these categories or positions, i.e., member of General Assembly, etc., holds any position of control or holds any ownership interest of 10% or greater. See Regulations at 4-6, and Forms F-1, F-2 and F-3. These disclosure requirements apply to contracts, subcontracts, and grants exceeding $10,000. Id. at 4, 5.
Agencies desiring to hire immediate family members, including spouses, of members of the General Assembly, constitutional officers, and state employees must submit a form to the Chief Fiscal Officer of the State providing information concerning the hiring official, the applicant and the position applied for, and a certification that customary hiring procedures were followed and that the applicant meets the necessary qualifications. See Regulations at 10, and Forms F-3 and F-4.
[2] A possible exception in the area of public employment is noted in the ensuing discussion.
[3] It is apparent from this exception in § 19-11-717 concerning contracts involving financially interested employees that questions may arise regarding utilization of the required information in certain instances. (Section 19-11-717 states that it shall not be a conflict of interest or a breach of ethical standards for an employee of an institution of higher education to be financially interested in a contract or proposal which involves patents, copyrights, or other proprietary information.) However, issues surrounding the Department's use of the disclosed information to either accept or reject a contract or grant are not within the scope of this opinion.